## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**DEIDRA CLAYTON, ET AL.**                                    CIVIL ACTION

**VERSUS**                                                          No. 11-845

**COLUMBIA CASUALTY COMPANY, ET**                    SECTION I
**AL.**

## ORDER AND REASONS

Before the Court is a motion[1] to dismiss or, in the alternative, for a Rule 7 reply filed by

defendants, Columbia Casualty Company, David Johnson, and Willie Graves. Plaintiffs, Deidra

Clayton and Angela Burke, oppose the motion.[2] For the following reasons, the motion to dismiss

is **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

Plaintiffs allege that a Livingston Parish sheriff's deputy believed to be David Johnson

("Deputy Johnson") shot and killed Jonathan Clayton ("Clayton") on April 4, 2011, without

justification while responding to a 9-1-1 phone call reporting a domestic dispute between

Clayton and his girlfriend.[3] According to the complaint, Deputy Johnson arrived at the scene

and told Clayton to come out of his house.[4] Clayton left his home and walked toward Deputy

Johnson.[5] When Clayton did not get on the ground as ordered, Deputy Johnson shot and killed

---

[1] R. Doc. No. 9.

[2] R. Doc. No. 15.

[3] R. Doc. No. 1.

[4] *Id.* at ¶ 11.

[5] *Id.* at ¶ 12.

1

Case 3:11-cv-00845-LMA-DEK   Document 25   07/19/12   Page 1 of 21

him.[6] Although Deputy Johnson later reported that Clayton had a knife, plaintiffs allege that Clayton was unarmed when Deputy Johnson shot him.[7] Plaintiffs allege that when they attempted to learn the identity of the deputy involved, Sheriff Willie Graves ("Sheriff Graves") refused to release the name of the officer unless they agreed not to file a lawsuit.[8]

On December 20, 2011, plaintiffs filed this lawsuit asserting claims under 42 U.S.C. § 1983, *et seq.* for violations of the United States Constitution and Louisiana state law.[9] Plaintiffs allege that to the extent any use of force was justified in this case, Deputy Johnson acted unreasonably, negligently, maliciously, and recklessly by killing Clayton without attempting to use a non-lethal method of restraint, such as pepper spray, taser, pepperball, or another less-than-lethal instrument.[10] Plaintiffs further allege that Johnson was neither equipped with such instruments nor trained or qualified in their use.[11] Plaintiffs claim that Sheriff Graves is liable under the doctrine of *respondeat superior* for Johnson's actions, for failing to perform an adequate pre-employment screening and assessment of Deputy Johnson, and for failing to ensure that Johnson was properly trained and equipped.[12] Plaintiffs also claim that Sheriff Graves is liable for intentional or negligent misrepresentation, impairment of a civil action, or other fault

---

[6] *Id.* at ¶¶ 13-14.

[7] *Id.* at ¶¶ 15-17.

[8] *Id.* at ¶¶ 21-23.

[9] *Id.* at ¶ 2.

[10] *Id.* at ¶ 18.

[11] *Id.* at ¶ 19.

[12] *Id.* at ¶¶ 27-29.

Case 3:11-cv-00845-LMA-DEK   Document 25   07/19/12   Page 2 of 21

encompassed by his failure to disclose and active concealment of Deputy Johnson's identity following the incident.[13]

Defendants contend that the complaint fails to adequately state a cause of action against Deputy Johnson or Sheriff Graves and that plaintiffs have failed to meet their heightened pleading requirement with respect to the defense of qualified immunity.[14] Defendants contend that if the complaint is not subject to dismissal, plaintiffs should be ordered to file a reply tailored to their defense of qualified immunity pursuant to Rule 7(a) and that the Court limit discovery to issues of qualified immunity only.[15]

### STANDARD OF LAW

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in *Gonzalez v. Kay:*

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

---

[13] *Id.* at ¶ 30.

[14] *Id.*

[15] *Id.*

Case 3:11-cv-00845-LMA-DEK   Document 25   07/19/12   Page 3 of 21

'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## *DISCUSSION*

### I. Individual Capacity Claims

#### A. Qualified Immunity

Defendants filed this motion to dismiss asserting the defense of qualified immunity against plaintiffs' § 1983 claims. In *Harlow v. Fitzgerald*, the United States Supreme Court established the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

4

A claim of qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). As stated by the Fifth Circuit in the context of a motion for summary judgment:

> First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. *See, e.g.*, *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002) (en banc); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). If not, our analysis ends. If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *See, e.g.*, *Tarver*, 410 F.3d at 750; *Glenn*, 242 F.3d at 312. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. *See Glenn*, 242 F.3d at 312; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Tarver*, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.").

*Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

When the defense of qualified immunity issue is raised in a motion filed pursuant to Rule 12(b)(6), "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness." *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)) (emphasis in original). The plaintiff must support his claim with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc). When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of

5

Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity. *Id.* at 1433-34. "The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Id.*

### B. Deputy Johnson

Deputy Johnson contends that plaintiffs have failed to allege facts sufficient to overcome his invocation of qualified immunity. Plaintiffs' claims against Deputy Johnson stem from their allegation that Deputy Johnson shot and killed Clayton unreasonably, without sufficient justification, and without first attempting to use non-lethal force. Deputy Johnson contends that plaintiffs have not provided enough specificity in their pleadings to show that Deputy Johnson did not believe, or was unreasonable in believing, that Clayton posed a threat to himself or others. Deputy Johnson argues that if such claims are not dismissed, plaintiffs should be ordered to file a reply tailored to defendants' pleading of qualified immunity and that the Court should limit discovery to that issue alone.

The Court must "make two 'overlapping objective reasonableness inquiries' " when conducting the qualified immunity analysis in excessive force cases. *Sanchez v. Fraley*, No. 09-50821, 2010 WL 1752123, at *2, (5th Cir. Apr. 30, 2010) (unpublished) (quoting *Lytle*, 560 F.3d at 410). As stated by the Fifth Circuit,

> Allegations that an officer used excessive force in conducting a seizure complicates the *Saucier* inquiry. This complexity stems from having to make two "overlapping objective reasonableness inquir[ies]." *Id.* at 210, 121 S. Ct. 2151 (Ginsburg, J., concurring in the judgment). We must first answer the constitutional violation question by determining whether the officer's conduct met the Fourth Amendment's reasonableness requirement, as discussed below. If we find that the officer's conduct was not reasonable under the Fourth Amendment, we must then answer the qualified immunity question by determining whether the law was

6

> sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. In other words, at this second step, we must ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable. Despite any seeming similarity between these two questions, they are distinct inquiries under *Saucier,* and we must conduct them both.

*Lytle*, 560 F.3d at 410.

The Court must first determine whether plaintiffs have sufficiently alleged that Deputy Johnson's conduct violated the Fourth Amendment. To state an excessive force claim, the plaintiff must establish that he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006) (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)). "Assessing the reasonableness of a police officer's use of force involves 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.' " *Lytle*,  560 F.3d at 411 (quoting *Graham,* 490 U.S. at 396) (internal quotation omitted). Some of the factors the Court considers are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396).

The Supreme Court has made clear that an officer's actions are judged under an objective standard that does not take into account an officer's subjective intent. *Graham,* 490 U.S. at 397. Government officers are also entitled to deference:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of

7

> reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.

*Id.* at 397. However, the "objective reasonableness" balancing test is "constrained" when an officer uses deadly force. *Sanchez*, 2010 WL 1752123, at \*2 (quoting *Flores*, 381 F.3d at 399). "It is objectively unreasonable to use deadly force 'unless it is necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.' " *Id.* (quoting *Garner*, 471 U.S. at 3) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so . . . . A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.").

In this case, plaintiffs allege that Deputy Johnson arrived at Clayton's home and ordered him to come out of his house. Plaintiffs claim that Clayton left his home and walked toward Deputy Johnson. When Clayton did not get on the ground as ordered, Deputy Johnson shot and killed him. While Deputy Johnson argues that he is entitled to qualified immunity because he believed Clayton had a knife, the allegations in the complaint provide facts that directly contradict the facts Deputy Johnson relies upon for his defense. Taking the facts alleged in the complaint as true, the allegation that Deputy Johnson shot an unarmed man for refusing to get on the ground sufficiently states a claim that Deputy Johnson's conduct was objectively unreasonable under the first prong of the *Saucier* inquiry.

The Court must next consider whether a reasonable officer would have known that the alleged conduct was unlawful in light of clearly established law. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533

8

U.S. at 202. "[T]he central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Lytle*, 560 F.3d at 417 (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir.2004) (en banc) (internal quotations omitted). "Thus, while the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Lytle*, 560 F.3d at 417 (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).

It is clearly established that use of deadly force is unreasonable unless an officer has "probable cause to believe that the suspect pose[es] a threat of serious harm to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). The allegations in this case are that Deputy Johnson shot an unarmed man for refusing to get on the ground. Because it is clearly established that use of deadly force is unreasonable unless Deputy Johnson had probable cause to believe that Clayton posed a serious threat of harm, plaintiffs have sufficiently alleged that Deputy Johnson's conduct was objectively unreasonable in light of clearly established law under the second prong of the *Saucier* inquiry. *See, e.g.*, *Lytle*, 560 F.3d at 410-18; *Reyes v. Bridgwater*, No. 09-10076, 2010 WL 271422, at *3-*5 (5th Cir. Jan 22, 2010) (unpublished); *Flores*, 381 F.3d at 397-402; *Sanchez*, 2010 WL 1752123, at *1-*4; *Brown v. Officer Doe*, No. 98-99, 1999 WL 1243057, at *4 (E.D. La. Dec. 21, 1999) (Clement, J.). Accordingly, the motion to dismiss plaintiffs' § 1983 claims against Deputy Johnson fails.

### C.  Sheriff Graves

#### 1.  Vicarious Liability

9

Sheriff Graves argues that plaintiffs cannot maintain a claim against him on the basis of *respondeat superior* and that all of plaintiffs' claims based on vicarious liability must be dismissed. Paragraph 27 of the complaint states as follows:

> Defendant Graves is liable unto Complainant Deidra Clayton, individually and on behalf of her deceased son Jonathan Clayton, under the doctrine of respondeat superior for Johnson's (a) excessive and unreasonable use of deadly force, (b) battery, (c) assault, (d) intentional infliction of emotional distress, fright, and outrage, (e) cruel treatment, (f) failing to provide adequate or timely medical attention, (g) violation of the Constitution and other laws of the United States and of the State of Louisiana, and (h) deliberate indifference to the rights, safety, and dignity of Jonathan Clayton.

Plaintiffs have recognized that Sheriff Graves may not be held liable under section 1983 for the unconstitutional conduct of his subordinates under a theory of *respondeat superior*. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although vicarious liability may be actionable under Louisiana state law,[16] to the extent plaintiffs have attempted to make such a claim based on "violation[s] of the Constitution and other laws of the United States," the motion to dismiss has merit.

### 2. Inadequate Hiring, Training, and Supervision

Sheriff Graves also argues that plaintiffs failed to state a claim against him for the inadequate hiring, training, and supervision of Deputy Johnson. Plaintiffs claim that Sheriff Graves is liable for performing an inadequate and reckless pre-employment screening and assessment of Deputy Johnson. After employing Deputy Johnson, plaintiffs allege that Sheriff Graves failed to ensure that Deputy Johnson was properly trained and equipped. Plaintiffs allege that Deputy Johnson was neither trained nor equipped with less-than-lethal equipment such as pepper spray, tasers, pepper balls, or other methods of restraint. Plaintiffs contend that such

---

[16] Defendants did not challenge plaintiffs' state law claim in their motion to dismiss.

conduct amounts to deliberate indifference with respect to the hiring, training, and supervision of Deputy Johnson. Sheriff Graves responds that that the allegations are not sufficient to state a claim upon which relief can be granted and cannot overcome his defense of qualified immunity.

The Fifth Circuit has held that "[a] sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur Cnty., TX,* 245 F.3d 447, 459 (5th Cir. 2001); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). With respect to the third prong, the Fifth Circuit has explained,

> Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, a supervisor might reasonably be found to be deliberately indifferent . . . .

> We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference. In *Cousin v. Small,* for example, we held that to succeed on his claim of failure to train or supervise the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to demonstrate a *pattern of*

> *violations.* Similarly, in *Snyder v. Trepagnier,* we held that "proof of a single violent incident ordinarily is insufficient" for liability. Rather, the plaintiff must demonstrate at least a pattern of *similar incidents in which the citizens were injured.* Moreover, a showing of deliberate indifference requires that the Plaintiffs show that the failure to train reflects a "deliberate" or "conscious" choice to endanger constitutional rights.
>
> Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party.[17]

*Estate of Davis*, 406 F.3d 381-83 (quotations, footnotes, and citations omitted).

Plaintiffs have the burden of pleading their claims with sufficient precision and factual specificity to raise a genuine issue as to the illegality of Sheriff Graves' conduct at the time of the alleged acts. While the Fifth Circuit has acknowledged that a plaintiff is not required to "plead facts 'peculiarly within the knowledge of defendants,' " *Morgan v. Hubert*, No. 08-30388, 2009 WL 1884605, at *5 (5th Cir. July 1, 2009) (unpublished) (quoting *Schultea*, 47 F.3d at 1432), it has cautioned that in order to permit discovery on a plaintiff's claim against a supervisory official, "the pleadings must have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation." *Floyd v. City of Kenner*, No. 08-306378, 2009 WL 3490278, at *6-*9 (5th Cir. Oct 29, 2009) (unpublished) (citing *Schultea*, 47 F.3d at 1434)

---

[17] "Claims of inadequate supervision and claims of inadequate training both generally require that the plaintiff demonstrate a pattern." *Estate of Davis*, 406 F.3d at 383 n.7. However, the Supreme Court has recognized that "in some instances there might be a relevant distinction between cases involving inadequate *hiring* and cases involving failure to supervise or train." *Id.* (emphasis in original) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (cautioning against wholly importing the reasoning of training cases into the hiring context and noting that "[u]nlike the risk from a particular glaring omission in a training regimen, the risk from a single instance of inadequate screening of an applicant's background is not 'obvious' in the abstract; rather it depends upon the background of the applicant"). The Supreme Court has held that "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference." *Brown*, 520 U.S. at 411.

(distinguishing *Morgan* and holding that allegations amounting to nothing more than speculation with respect to a supervisory official's participation in a constitutional violation did not "fall[] squarely within the kind of case justifying limited discovery . . . ."). As stated by the Fifth Circuit:

> There has to be more underlying a complaint than a hope that events happened in a certain way. Instead, in the short and plain claim against a public official, a plaintiff must at least chart a factual path to the defeat of the defendant's immunity, free of conclusion. Once that path has been charted with something more than conclusory statements, limited discovery might be allowed to fill in the remaining detail necessary to comply with *Schultea*.

*Floyd*, 2009 WL 3490278, at *8 (internal citations and quotations omitted); *see also Iqbal*, 129 S. Ct. at 1950-51; *Schultea*, 47 F.3d at 1430.

In this case, plaintiffs have failed to set forth facts showing that Sheriff Graves was deliberately indifferent with respect to the hiring, training or supervision of Deputy Johnson. The complaint sets forth conclusory allegations of supervisory liability supported only by an inference that Sheriff Graves might be responsible for Deputy Johnson's actions. While the Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of plaintiffs, the bare assertion that supervisory deficiencies caused Clayton's death is not supported by any factual assertions showing that such supervisory deficiencies existed. Plaintiffs have noticeably failed to allege a pattern of similar incidents involving Sheriff Graves' subordinates establishing that his alleged failure to screen, train, and supervise Deputy Johnson reflected a "deliberate" or "conscious" choice to endanger constitutional rights. Without factual allegations "chart[ing] a factual path to the defeat of the defendant's immunity," plaintiffs are unable to "nudge[] [their] claims . . . across the line from conceivable to plausible." *Floyd*, 2009 WL 3490278, at *8 (quoting *Schultea*, 47 F.3d at 1430; *Iqbal*, 129 S. Ct. at 1950-51). Accordingly,

13

the Court finds that Sheriff Graves is entitled to a Rule 7 reply tailored to his invocation of qualified immunity.

### 3. Concealment of Deputy Johnson's Identity

Sheriff Graves contends that plaintiffs cannot overcome his invocation of qualified immunity with respect to their allegations that he concealed Deputy Johnson's identity. Plaintiffs allege that they suffered severe emotional distress when Sheriff Greaves refused to disclose Deputy Johnson's identity after the shooting. They allege that Deidra Clayton, through counsel, sought the identity of the officer responsible for the shooting, but were told that his identity would be disclosed only if Ms. Clayton promised not to file a lawsuit. Plaintiffs contend that such conduct violated their constitutional right of access to the courts. Sheriff Graves argues that plaintiffs' claim must be dismissed because they cannot show that his alleged conduct amounted to a violation of their constitutional rights.

The Supreme Court has recognized two general categories of denial of access to the courts claims. *Christopher v. Harbury*, 536 U.S. 403, 122 S. Ct. 2179, 2185, 153 L. Ed. 2d 413 (2002). The first category involves claims "that systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* The second category involves claims "of specific cases that cannot now be tried" because of some official action, "no matter what official action may be in the future." *Id.* at 413-14. Cases in this second category "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted). The allegations in this lawsuit fall within the second category of claims because plaintiffs seek damages based on past conduct that allegedly impaired their ability to file this lawsuit.

Case 3:11-cv-00845-LMA-DEK   Document 25   07/19/12   Page 14 of 21

The right of access to the courts that plaintiffs seek to vindicate "protects physical access to the courts, *i.e.*, the ability to actually file suit, as well as 'adequate, effective, and meaningful' access to the courts." *Ellis v. Magee & Devereux*, No. 00-3145, 2001 WL 167744, at *2 (E.D. La. Feb. 15, 2001) (Barbier, J.) (quoting *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1982)); *cf. Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994) (limiting denial of access claims to those cases involving interference with the initiation of a lawsuit). The Fifth Circuit has characterized the right of access as "implicated where the ability to file suit was delayed, or blocked altogether." *Smart v. Holder*, No. 09-101, 2009 WL 2498213, at *6 (W.D. Tex. Aug. 12, 2009) (quoting *Foster*, 28 F.3d at 430); *see, e.g.*, *Ryland*, 708 F.2d at 973 (holding that covering up a murder and delaying the filing of a lawsuit could violate right of access to the courts). However, the Fifth Circuit has declined to hold that the right of access is clearly established beyond its existence as "a facilitative right to institute a suit without official resistance, blocks, or delay to filing." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (holding that official retaliation for having filed and won a lawsuit does not implicate the right of access to the courts); *Foster*, 28 F.3d at 430[18] (holding that post-filing discovery abuses do not implicate the right of access to the courts); *Ellis*, 2001 WL 167744, at *2 (holding that filing false affidavits to defeat a breach of contract claim does not implicate the right of access to the courts);

The allegations in this case fall short of stating a claim that Sheriff Graves violated plaintiffs' constitutional right of access to the courts. Even if Sheriff Graves refused to disclose Deputy Johnson's identity unless Deidra Clayton gave up her right to file a lawsuit over Jonathan Clayton's death, plaintiffs have not alleged that such conduct impaired or delayed their ability to

---

[18] Although the Fifth Circuit's holding in *Foster* specifically related to the right of access as clearly established in the years 1985-1988, the court noted that "[i]n cases decided after 1988, our court has continued to characterize the right of access in terms of the right to institute suit." *Foster*, 28 F.3d at 430 n.8.

file this lawsuit. *See Davis v. City of N. Richland Hills*, No. 00-438, 2003 WL 22244694, at *19 (N.D. Tex. Sept. 30, 2003) (holding that an alleged conspiracy to conceal the nature of a shooting did not implicate the right of access to the courts because it did not impede or prevent plaintiffs from filing a lawsuit) *rev'd on other grounds*, 406 F.3d 375 (5th Cir. 2005); *Smart*, 2009 WL 2498213, at *6 (holding that preventing a plaintiff from using government resources to sue the federal government did not implicate the right of access to the courts because the plaintiff successfully instituted his lawsuit and his ability to do so was not blocked). Accordingly, the motion to dismiss plaintiffs' claims against Sheriff Graves for denial of access to the courts has merit.

## II. Official Capacity Claims

Defendants also contend that plaintiffs have failed to state a claim against Sheriff Graves in his official capacity. As the U.S. Supreme Court explained in *Kentucky v. Graham:*

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. [ *Brandon v. Holt,* 469 U.S. 464, 471–472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985).] It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

473 U.S. 159, 165–66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

Case 3:11-cv-00845-LMA-DEK   Document 25   07/19/12   Page 16 of 21

A plaintiff asserting a § 1983 claim against a municipal official in his official capacity or a § 1983 claim against a municipality, "must show that the municipality has a policy or custom that caused his injury." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). To establish an "official policy," a plaintiff must allege either of the following:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). Although "a single decision may create municipal liability *if* that decision were made by a final policymaker responsible for that activity," *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original), absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under § 1983. *Id.* A municipality cannot be held liable under § 1983 for the tortious behavior of its employees under a theory of *respondeat superior. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*

The Supreme Court has held that municipal policies and practices amounting to deliberate indifference with respect to training, supervision, and/or hiring may give rise to § 1983 liability. *See City of Canton v. Harris*, 489 U.S. 378, 380 (1989); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410-11, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). The Fifth Circuit has

held that an official is liable under § 1983 for a failure to train or supervise only where the plaintiff establishes that: "(1) the official failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (alteration omitted) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)). A complaint must show that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. To state a claim, plaintiffs "must plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation." *McClure v. Biesenbach*, No. 08-50854, 2009 WL 4666485, at *2 (5th Cir. Dec. 9, 2008) (unpublished) (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162 (5th Cir. 1997)).

However, the Supreme Court has expressly prohibited the application of a heightened pleading standard to § 1983 claims against municipalities. *Jones v. Bock,* 549 U.S. 199, 212-13, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Instead, plaintiffs need only comply with notice pleading requirements by presenting a "short and plain statement of the claims showing that the pleader is entitled to relief." *Id.* Boilerplate allegations of inadequate municipal policies or customs are generally sufficient. *See, e.g.*, *Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir. 2006); *Ortiz v. Geo Group, Inc.*, No. 07-645, 2008 WL 219564, at *2 (W.D. Tex. Jan. 25, 2008); *Jacobs v. Port Neches Police Dept.*, No. 94-767, 1996 WL 363023, at *13-15 (E.D. Tex. June 26, 1996); *DeFrancis v. Bush*, 839 F. Supp. 13, 14 (E.D. Tex. 1993). A complaint need only "give the defendant fair notice of what the plaintiff's claim is

and the grounds upon which it rests." *Mack*, 461 F.3d at 556 (quoting *Leatherman*, 507 U.S. at 168).

In this case, the claims against Sheriff Graves in his official capacity are not supported by allegations showing that his conduct related to any official policies or customs that caused Clayton's death. Although Sheriff Graves is alleged to be an official policymaker, the allegations in the complaint fail to describe any "policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority." *See Bennett*, 735 F.2d at 862. Nor do the allegations in the complaint state that "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* Given the liberal pleading requirement with respect to § 1983 claims asserted against a municipality, the Court will grant plaintiffs leave to amend their complaint, if they can do so, to include a short and plain statement that such a policy and/or custom existed with respect to their claims of inadequate hiring, training, and supervision.

## III. Punitive Damages

Defendants contend that plaintiffs claims for punitive damages under § 1983 must also be dismissed. Section 1983 does not allow for recovery of punitive damages against a municipal entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). To the extent plaintiffs seek punitive damages against defendants in their official capacities, such claims must be dismissed. However, punitive damages are available from individual defendants under § 1983. *Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Under § 1983, punitive damages may be awarded only if the official conduct is

19

"motivated by evil motive or intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. *Id.* Plaintiffs have alleged that Deputy Johnson maliciously and recklessly shot and killed Clayton. Plaintiffs have also alleged that Sheriff Graves recklessly failed to perform an adequate pre-employment assessment of Deputy Johnson and to ensure that he was properly trained and equipped. Accordingly, the motion to dismiss plaintiffs' claims for punitive damages is meritorious to the extent they are asserted against Sheriff Graves in his official capacity and without merit to the extent they are asserted against defendants in their individual capacities.

### CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion to dismiss or, in the alternative, for a Rule 7 reply is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that plaintiffs' § 1983 claims against Sheriff Graves are **DISMISSED WITH PREJUDICE** to the extent they rely on a theory of *respondeat superior*.

**IT IS FURTHER ORDERED** that plaintiffs' § 1983 claims against Sheriff Graves for denial of access to the courts are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiffs will file a Rule 7 reply by **Monday, July 30, 2012,** tailored to Sheriff Graves' defense of qualified immunity with respect to the allegations that he acted with deliberate indifference when hiring, training, and supervising Deputy Johnson.

**IT IS FURTHER ORDERED** that plaintiffs will file an amended complaint, if they can do so, with respect to their claims against Sheriff Graves in his official capacity by **Tuesday, July 24, 2012.**

**IT IS FURTHER ORDERED** that plaintiffs' § 1983 claims for punitive damages against Sheriff Graves in his official capacity are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to dismiss is **DENIED** in all other respects.


New Orleans, Louisiana, July 17, 2012.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**